AO93 Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
for the
District of Arizona

| | |
|---|---|
| In the Matter of the Search of<br>*One cellular telephone in a black case with white markings located at Locker #176-A-06 at Maricopa County Intake Transfer and Release 2670 South 28th Drive, Phoenix, AZ, 85009* | Case No.<br><br>22-312 MB |

## SEARCH AND SEIZURE WARRANT

To:   Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the seizure and search of the following person or property located in the District of Arizona:

**As further described in Attachment A.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal:

**As set forth in Attachment B.**

**YOU ARE COMMANDED** to execute this warrant on or before October 20, 2022 *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m. ☒ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to <u>any United States Magistrate Judge on criminal duty in the District of Arizona</u>.

N/A ☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized ☐ for _30_ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: 10·6·2022 @ 8:30 AM   *Michelle Burns*
_____
*Judge's signature*

City and state: <u>Phoenix, Arizona</u>        <u>Honorable Michelle H. Burns, U.S. Magistrate Judge</u>
*Printed name and title*

## ATTACHMENT A
### Property to Be Seized and Searched

The property to be seized and searched is a cellular telephone in a black case with white markings belonging to Tony Riggins Jr., which is currently stored in Locker #176-A-06 at the Maricopa County Intake Transfer and Release located at 2670 South 25th Drive, Phoenix, Arizona 85009.




## ATTACHMENT B

### Property to be seized

1. The SUBJECT CELLULAR TELEPHONE, as described in **Attachment A**, which is currently stored in Locker #176-A-06 at the Maricopa County Intake Transfer and Release located at 2670 South 25th Drive, Phoenix, Arizona 85009.

2. Any records and information found within the digital contents of the SUBJECT CELLULAR TELEPHONE that relates to violations of 21 U.S.C. § 841 (Possession with Intent to Distribute a Controlled Substance), including:

    a. all information related to the sale, purchase, receipt, shipping, importation, transportation, transfer, possession, or use of drugs;

    b. all information related to buyers or sources of drugs (including names, addresses, telephone numbers, contact information, photographs, locations, or any other identifying information);

    c. all bank records, checks, credit card bills, account information, or other financial records reflecting the disposition of drug proceeds;

    d. all information regarding the receipt, transfer, possession, transportation, or use of drug proceeds;

    e. evidence indicating the cellular telephone user's state of mind as it relates to the crime under investigation;

    f. contextual information necessary to understand the above evidence.

2. Any records and information found within the digital contents of the SUBJECT CELLULAR TELEPHONE showing who used or owned the devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, correspondence, photographs, and browsing history;

As used above, the terms "records" and "information" includes records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications; subscriber and device information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the cellular telephone.

This warrant authorizes a review of records and information seized, copied or disclosed pursuant to this warrant in order to locate evidence and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized, copied, or disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

AO 106 Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
District of Arizona

| | |
|---|---|
| In the Matter of the Search of<br>*One cellular telephone in a black case with white markings located at Locker #176-A-06 at Maricopa County Intake Transfer and Release 2670 South 28th Drive, Phoenix, AZ, 85009* | Case No. 22-312MB |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search and seizure warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

**As further described in Attachment A**

located in the District of Arizona, there is now concealed:

**As set forth in Attachment B.**

The basis for the search under Fed. R. Crim. P. 41(c) is:
- ☒ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☒ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code/Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Possession with Intent to Distribute a Controlled Substance |

The application is based on these facts:

**See attached Affidavit.**

- ☒ Continued on the attached sheet.
- ☐ Delayed notice of _30_ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA Emma Mark

EMMA MARK
Digitally signed by EMMA MARK
Date: 2022.10.05 14:52:51 -07'00'

Sworn by telephone.

Date: 10·6·2022

City and state: Phoenix, Arizona

*Jo-Lynn Hatley*
Applicant's Signature

Det. Jo-Lynn J. Hatley, Gila River Police Department
*Printed name and title*

*[signature]*
Judge's signature

Honorable Michelle H. Burns, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A
### Property to Be Seized and Searched

The property to be seized and searched is a cellular telephone in a black case with white markings belonging to Tony Riggins Jr., which is currently stored in Locker #176-A-06 at the Maricopa County Intake Transfer and Release located at 2670 South 25th Drive, Phoenix, Arizona 85009.




## ATTACHMENT B

### Property to be seized

1. The SUBJECT CELLULAR TELEPHONE, as described in **Attachment A**, which is currently stored in Locker #176-A-06 at the Maricopa County Intake Transfer and Release located at 2670 South 25th Drive, Phoenix, Arizona 85009.

2. Any records and information found within the digital contents of the SUBJECT CELLULAR TELEPHONE that relates to violations of 21 U.S.C. § 841 (Possession with Intent to Distribute a Controlled Substance), including:

   a. all information related to the sale, purchase, receipt, shipping, importation, transportation, transfer, possession, or use of drugs;

   b. all information related to buyers or sources of drugs (including names, addresses, telephone numbers, contact information, photographs, locations, or any other identifying information);

   c. all bank records, checks, credit card bills, account information, or other financial records reflecting the disposition of drug proceeds;

   d. all information regarding the receipt, transfer, possession, transportation, or use of drug proceeds;

   e. evidence indicating the cellular telephone user's state of mind as it relates to the crime under investigation;

   f. contextual information necessary to understand the above evidence.

2. Any records and information found within the digital contents of the SUBJECT CELLULAR TELEPHONE showing who used or owned the devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, correspondence, photographs, and browsing history;

As used above, the terms "records" and "information" includes records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications; subscriber and device information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the cellular telephone.

This warrant authorizes a review of records and information seized, copied or disclosed pursuant to this warrant in order to locate evidence and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized, copied, or disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

Your Affiant, Jo-Lynn J. Hatley, a Criminal Investigator for the Gila River Police Department, being first duly sworn, hereby deposes and states as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. Your Affiant makes this Affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to seize and examine one cellular telephone in a black case with white markings located in Locker #176-A-06 at the Maricopa County Intake Transfer and Release, located at 2670 South 28th Drive, Phoenix, Arizona, as described in **Attachment A** (hereafter the "SUBJECT CELLULAR TELEPHONE"), and to extract the electronically stored information set forth in **Attachment B**, which represents evidence and/or instrumentalities of the criminal violations further described below.

2. As more fully detailed herein, on or about September 22, 2022, within the confines of the Gila River Indian Community ("GRIC"), within the District of Arizona, TONY RIGGINS JR (hereinafter referred to as RIGGINS), was in possession of controlled substances (suspected fentanyl and methamphetamine) with intent to distribute, within the boundaries of GRIC, in violation of 21 U.S.C. §841(a)(1)).

3. I am a certified police officer within the State of Arizona having successfully graduated from the Mesa Police Academy in June of 2014. I have been employed with the Gila River Police Department continuously since January of 2017. In that time, I have worked in the capacity of a Patrol Officer, General Crimes Detective and am currently assigned as a Violent Crimes Detective. During my various assignments I have been responsible for investigations involving a variety of crimes including but not limited to property, financial, aggravated assaults, homicide and other potentially drug-related crimes. I have been trained in various aspects of law enforcement, including searching and seizing of digital media to include telephone and social medial content. In addition, I have been involved in multiple investigations in which digital media, including cellular phones and social media accounts have been seized, searched and forensically examined. I

obtained a Special Law Enforcement Commission through the Bureau of Indian Affairs. As such, I am a law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), that is, I am an officer of the United States who is authorized by law to conduct investigations of, and make arrests for, offenses enumerated in Title 18 and Title 21.

4. The statements contained in this Affidavit are based on information obtained from the knowledge and observations of other sworn law enforcement officers, either directly or indirectly through their reports or affidavits. In addition to information derived from your Affiant's personal knowledge, training, and experience.

5. Because this Affidavit is being submitted for the limited purpose of establishing probable cause for the requested warrant, your Affiant has not set forth all of the relevant facts known to law enforcement officers.

## BASIS FOR PROBABLE CAUSE

6. On September 20, 2022, officers were dispatched to J.R's residence within GRIC at her request to have her brother RIGGINS removed from her home. While en route to the location, officers performed a warrants check which indicated RIGGINS had two extraditable Felony Warrants issued out of Maricopa County Courts for Failure to appear for original charges of Narcotic Possession.

7. Upon arrival, officers observed a male subject identified as RIGGINS in the common living area of the residence with multiple bags, including a blue Jansport backpack within his reach. RIGGINS was observed placing items in the backpack as he advised officers he was gathering his things.

8. RIGGINS requested to sit on the couch with his one-year-old daughter while waiting on confirmation of the above listed warrants. Officers complied with RIGGINS' request. While seated on the couch, RIGGINS was observed by Gila River

2

Police Department Officer B. Lovell fidgeting, and RIGGINS turned toward the arm of the couch (located on his right) shielding officers' view with his body.

9. Once the warrants were confirmed, Officer Lovell observed RIGGINS hand something to J.R as he was being escorted out of the house. J.R told Officer Lovell RIGGINS was using "meth" and added that he passed her a plastic bag when he handed J.R. his daughter. The baggie contained a crystalline substance. J.R. gave the baggie to Officer Lovell, which was later weighed at the Gila River Police Department. The crystalline substance had a weight of 0.8 grams, including packaging material.

10. While walking to the patrol vehicle, RIGGINS dropped a clear baggie from his left hand where he was also holding $450.00 in U.S. currency. When questioned about the baggie, RIGGINS told officers it was empty.

11. With J.R's permission, Officer Lovell searched the couch where RIGGINS had been sitting. There, placed between the arm and the cushion of the couch, Officer Lovell located a clear plastic bag containing several blue tablets marked "M-30," believed to be Fentanyl, along with a clear plastic bag containing a crystalline substance.

12. There were approximately 260 of the "M-30" blue pills. The crystalline substance was later weighed at the Gila River Police Department and it had a weight of 25.2 grams including packaging material. The crystalline substance was also tested utilizing the TruNarc system which returned positive for methamphetamine.

13. J.R advised Officer Lovell that the Jansport backpack belonged to RIGGINS and she did not want his bag at her home. J.R. searched the backpack and told Officer Lovell she located drugs and paraphernalia inside of it. Officer Lovell took the backpack and transported it to the Gila River Department of Rehabilitation and Supervision (DRS) where RIGGINS was being booked into jail. While located at the jail, Officer Lovell asked RIGGINS if the backpack belonged to him and he said yes.

14. During an inventory of the Jansport backpack, Officer Lovell located an Arizona Driver's License issued to RIGGINS, additional bags of a crystalline substance,

3

a jar full of blue tablets marked "M-30," a large plastic bag containing a green leafy substance with the same consistency and appearance as marijuana, smoking paraphernalia, hypodermic needles and a small digital scale.

15. Officers tested the crystalline substances contained in the bags utilizing the TruNarc system which returned positive results for methamphetamine.

16. Based on my training and experience, digital scales are known to be used by drug dealers to weigh items/drugs and package them at predetermined weights. In addition, I am aware that people who deal drugs often use small plastic baggies to house pre-weighted drugs. This is used to determine how much of the illegal drug is being sold and/or distributed in pre-packaged bags and allows the dealer to perform transactions quickly for a set price.

17. While reviewing body worn camera footage from RIGGINS' arrest, your Affiant observed that after being placed in the rear seating area of the patrol vehicle, RIGGINS asked the arresting officer if he could get a number from his cell phone. The officer handed RIGGINS a black in color touch screen cellular phone, the SUBJECT CELLULAR TELEPHONE, which RIGGINS appeared to access. RIGGINS then read off a few phone numbers which the officer wrote down for him on a piece of paper. RIGGINS then handed the officer the cell phone, which was eventually placed with RIGGINS' personal property at Gila River Department of Rehabilitation and Supervision.

18. On September 26, 2022, RIGGINS was transported to the Watkins Jail located at 2680 South 28th Drive Phoenix, Arizona, where he was booked for his outstanding felony warrants. Your Affiant contacted the Watkins Jail and was advised by the call taker that RIGGINS property, including the SUBJECT CELLULAR TELEPHONE, was secured in Locker #176-A-06 at Maricopa County Intake Transfer and Release, located at 2670 South 28th Drive, Phoenix, Arizona.

4

19. In my training and experience, I know that the SUBJECT CELLULAR TELEPHONE has been stored in a way that the contents are, to the extent material to this investigation, in substantially the same state as they were when the SUBJECT CELLULAR TELEPHONE first came into the possession of the Gila River Police Department.

## ITEMS TO BE SEIZED

20. Based upon the facts contained in this Affidavit, your Affiant submits there is probable cause to believe that the items listed in **Attachment B** will be found in the contents of the SUBJECT CELLULAR TELEPHONES.

21. Based on my training, education, and experience, and discussions with other trained law enforcement personnel, along with information provided by sources of information and confidential sources, your Affiant knows the following:

   a. Drug traffickers commonly use cellular telephones to communicate with other drug traffickers and customers about drug-related activities through the use of telephone calls, text messages, email, chat rooms, social media, and other internet- and application-based communication forums. Moreover, drug traffickers commonly use other capabilities of cellular telephones to further their drug trafficking activities. Therefore, evidence related to drug trafficking activity is likely to be found on the SUBJECT CELLULAR TELEPHONE.

   b. Drug traffickers often have access to large amounts of United States currency in order to maintain and finance their ongoing trafficking activities. Therefore, records of the movement of drug proceeds, including deposits, transfers, and purchases, are likely to be found on the SUBJECT CELLULAR TELEPHONE.

   c. Drug traffickers and persons involved in the manufacturing, distributing, sorting, and possession of controlled substances often possess firearms and other weapons, both legal and illegal, in order to protect their person, drugs, or the proceeds of drug transactions. Moreover, drug traffickers commonly take photographs of their firearms. Therefore, photographs of firearms and records related to the possession,

5

acquisition, and sale of firearms are likely to be found on the SUBJECT CELLULAR TELEPHONE.

22.  In addition to items which may constitute evidence and/or instrumentalities of the crimes set forth in this Affidavit, your Affiant also requests permission to seize any articles tending to establish the identity of persons who have dominion and control over the SUBJECT CELLULAR TELEPHONE.

### DIGITAL EVIDENCE STORED WITHIN A CELLULAR TELEPHONE

23.  As described in **Attachment B**, this application seeks permission to seize the SUBJECT CELLULAR TELEPHONE and search for records and information that might be found in the contents of the SUBJECT CELLULAR TELEPHONE. Thus, the warrant applied for would authorize the copying of electronically stored information under Rule 41(e)(2)(B).

24.  *Probable cause.* Your Affiant submits that there is probable cause to believe records and information relevant to the criminal violations set forth in this Affidavit will be stored on the SUBJECT CELLULAR TELEPHONE for at least the following reasons:

   a.  Your Affiant knows that when an individual uses a cellular telephone, the cellular telephone may serve both as an instrumentality for committing the crime and also as a storage medium for evidence of the crime. The cellular telephone is an instrumentality of the crime because it is used as a means of committing the criminal offense. The cellular telephone is also likely to be a storage medium for evidence of crime. From my training and experience, your Affiant believes that a cellular telephone used to commit a crime of this type may contain data that is evidence of how the cellular telephone was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

   b.  Based on my knowledge, training, and experience, your Affiant knows that cellular telephones contain electronically stored data, including, but not limited

6

to, records related to communications made to or from the cellular telephone, such as the associated telephone numbers or account identifiers, the dates and times of the communications, and the content of stored text messages, e-mails, and other communications; names and telephone numbers stored in electronic "address books;" photographs, videos, and audio files; stored dates, appointments, and other information on personal calendars; notes, documents, or text files; information that has been accessed and downloaded from the Internet; and global positioning system ("GPS") information.

    c.    Based on my knowledge, training, and experience, your Affiant knows that electronic files or remnants of such files can be recovered months or even years after they have been downloaded onto a cellular telephone, deleted, or viewed via the Internet. Electronic files downloaded to a cellular telephone can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a cellular telephone, the data contained in the file does not actually disappear; rather, that data remains on the cellular telephone until it is overwritten by new data.

    d.    Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the cellular telephone that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a cellular telephone's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

    25.    *Forensic evidence.* As further described in **Attachment B**, this application seeks permission to locate not only electronic files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how the cellular telephone was used, the purpose of the use, who used it, and when. There is probable cause to believe that this forensic electronic evidence will be found in the contents of the SUBJECT CELLULAR TELEPHONE because:

7

a. Data in a cellular telephone can provide evidence of a file that was once in the contents of the cellular telephone but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. As explained herein, information stored within a cellular telephone may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within electronic storage medium (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the cellular telephone. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the cellular telephone was remotely accessed, thus inculpating or exculpating the owner. Further, activity on a cellular telephone can indicate how and when the cellular telephone was accessed or used. For example, as described herein, cellular telephones can contain information that log: session times and durations, activity associated with user accounts, electronic storage media that connected with the cellular telephone, and the IP addresses through which the cellular telephone accessed networks and the internet. Such information allows investigators to understand the chronological context of cellular telephone access, use, and events relating to the crime under investigation. Additionally, some information stored within a cellular telephone may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a cellular telephone may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created.

The geographic and timeline information described herein may either inculpate or exculpate the user of the cellular telephone. Last, information stored within a cellular telephone may provide relevant insight into the user's state of mind as it relates to the offense under investigation. For example, information within a computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

      c.     A person with appropriate familiarity with how a cellular telephone works can, after examining this forensic evidence in its proper context, draw conclusions about how the cellular telephone was used, the purpose of its use, who used it, and when.

      d.     The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a cellular telephone that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, cellular telephone evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on one cellular telephone is evidence may depend on other information stored on that or other storage media and the application of knowledge about how electronic storage media behave. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

      e.     Further, in finding evidence of how a cellular telephone was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

      26.    *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant your Affiant is applying for would permit imaging or otherwise

copying the contents of the SUBJECT CELLULAR TELEPHONE, including the use of computer-assisted scans.

27. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

28. Your Affiant submits there is probable cause to believe that the items listed in **Attachment B**, which constitute evidence and/or instrumentalities of violations of 21 U.S.C. § 841 (Possession with Intent to Distribute a Controlled Substance) are likely to be found in the contents of the SUBJECT CELLULAR TELEPHONE further described in **Attachment A**.

*Jo-Lynn Hatley*
Detective Jo-Lynn J. Hatley #1434
Gila River Police Department

Telephonically subscribed and sworn to before me this __6__ day of __October__, 2022.

HONORABLE MICHELLE H. BURNS
United States Magistrate Judge

10